HARLEY CARTER, Appellant, v. F. W. McCLAIN et al., Appellees.
No. 41502.

OCTOBER 19, 1932.

Ralph H. Munro and Roberts & Roberts, for appellant.

No appearance for appellees in this court.

FAVILLE, J.—We shall refer to the defendant F. W. McClain as though he were the sole appellee.

The appellant was surety on the appeal bond of the appellee in a case which was brought to this court. He became liable on said bond, and in satisfying the same became the owner by assignment of the judgment against the appellee. This action is brought to subject certain real estate which stands in the name of appellee's wife to the lien of said judgment. The court established said judgment as a lien upon said described real estate, and no appeal having been taken from such order by appellee, we give this phase of the case no further consideration.

In order to indemnify the appellant as surety upon the appellee's appeal bond before referred to, the appellee gave to the appellant certain collateral security under a written agreement entered into between the parties. Said agreement was made on or about the 8th day of December, 1923, and provided that the appellee should assign to the appellant "a certain promissory note in the sum of $4,500, executed by Ellsworth Turney and wife, dated July 7, 1917, and secured by a mortgage upon 1418.87 acres of land in Chariton County, Missouri."

Said contract further provided:

"It is further understood and agreed by and between the parties hereto that second party shall have the right and privilege of collecting said forty-five hundred dollar ($4,500.00) note and mortgage and account for said note or the proceeds thereof as hereinafter provided for."

It appears that at or about the time of said transaction the land covered by said mortgage was apparently subject to prior mortgages thereon, the face value of which aggregated $71,000, and that there were three other mortgages on said premises which were junior to the said assigned mortgage of $4,500. These junior mortgages appear to have been for $5,000, $1,600, and $6,000. One of said prior mortgages, in the amount of $19,000, appears to have been owned jointly by appellant and appellee, and the same had apparently been paid off about March 5, 1921, so that at the time of the execution of the contract of pledge the prior incumbrance

existing and unpaid against said premises in fact was of the face value of $52,000, although the $19,000 mortgage had not been cancelled or satisfied of record. It appears that the appellant became the owner of or was interested in the three junior mortgages.

In February, 1925, the appellant paid the judgment against the appellee secured by appellant's bond, and took an assignment thereof from the judgment creditor. It is appellee's contention that shortly thereafter the appellee demanded of appellant that he commence foreclosure on the $4,500 note and mortgage. There is much conflicting evidence in the record with regard to the claim that demand was made upon the appellant to institute such foreclosure proceedings. The appellant explains his delay in instituting foreclosure proceedings in part upon the belief that one Dillon Turney had obligated himself by a letter to the appellant to pay said note, and that he did not believe it wise to incur the expense of instituting foreclosure proceedings in view of the size of the first mortgage on said premises and the depreciated value of the property. There is also evidence tending to show that sometime in the fall of 1925, the attorney for the appellee requested the appellant to start proceedings to foreclose said mortgage, and that it was agreed between the parties that the foreclosure should not be commenced until the spring of 1926, awaiting the payment of interest on the first mortgage and taxes on the land by the then fee-holder. The appellant contends that he went to Missouri in the spring of 1926, and made inquiry and investigation and discovered that the equity in the land was so small that an attempt at foreclosure would be futile, and he contends that he advised the appellee to that effect and that thereafter he and appellee called on Dillon Turney, the then holder of the title, and tried to get him to pay said mortgage. This matter is in dispute. In any event, no foreclosure action was commenced by the appellant until in July of 1929, which it appears was shortly before the time the note would outlaw under the law of Missouri. This foreclosure proceeding went to judgment and sale, and the appellant's wife bid in the property at $50 more than the amount due on the senior and superior lien then against the land, and under the Missouri law of foreclosure a deed to said premises was then issued to the purchaser. It also appears that a receiver was appointed and the net proceeds of the receivership were turned over to the appellant by the receiver.

The lower court held that it was the appellant's duty to start

foreclosure proceedings on said note and mortgage within a reasonable time after March 1, 1926, and held that such action should have been started by appellant before September 1, 1926. The court allowed the appellee on his set-off the full amount of principal and interest on said note as of said date of September 1, 1926.

A large amount of evidence was introduced by both sides with respect to the value of the land covered by said mortgage, and, as might be expected, there is a very wide range in the opinions of value as given by the witnesses for the respective parties. No evidence seems to have been produced by either party as to the value of the note and mortgage in question. The evidence affirmatively established that there has been a very appreciable decline in the value of this and other lands since the date of the pledging of said note in February, 1921.

The rule recognized in this state is that the pledgee of securities is required to use ordinary diligence in protecting the rights of the pledgor in the property that is pledged, and such has been defined to be that of an ordinarily prudent man in the conduct of his own business. First National Bank v. O'Connell, 84 Iowa 377; Loomis v. Reimers, 119 Iowa 169. Under this rule it becomes a fact question as to whether or not the appellant used ordinary diligence in the matter of collecting the pledged note and mortgage. The evidence is in direct conflict and no useful purpose could be served by our setting it out in detail.

There is no doubt that the premises were heavily incumbered. The value of the property was depreciating. The appellant was advised by reliable parties that the equity in the land was so small that foreclosure was not justified. The appellant apparently had some reason to believe that the note and mortgage might be paid by the fee-holder. It also is to be remembered that the appellee had the legal right to redeem the collateral at any moment. Furthermore, the appellee had a right to enforce the collection himself without objection by the appellant. Gilman v. Heitman ,137 Iowa 336; Benjamin v. Petersen Heat, Light & Power Co., 170 Iowa 461.

Under all the circumstances of this case as shown by the record we are constrained to hold that the appellee did not successfully carry the burden of proving that appellant had been negligent in said matter to the appellee's injury.

II. Even if it be assumed that the appellant was negligent in failing to institute the action of foreclosure on the said pledged

note prior to the time at which the action was begun, another question confronts us with regard to the proper measure of damages. What did the appellee lose by reason of the claimed negligence of the appellant in not sooner instituting said action of foreclosure? It is true that a presumption prevails that a negotiable note is worth its face value. Leonard v. Sehman, 206 Iowa 277. But in the instant case the evidence showed that the makers of the note were insolvent. This fact appearing of record, the burden still rested upon the appellee to establish the damages which he suffered by reason of the alleged negligence of the appellant in failing to institute said. suit of foreclosure at an earlier date than it was instituted.

The question may be put in this manner: what was the fair and reasonable value of the note and mortgage in question at the time the appellant was guilty of negligence, if he was so guilty? The court fixed this date as September 1, 1926. There was at that time a senior and superior mortgage upon the real estate of the face value of $52,000. There was of record a second mortgage of the face value of $19,000, and there was a disputed question as to whether said mortgage had been paid off or was a subsisting lien, and it transpired that an action was necessary in order to determine the rights of the parties in respect to said mortgage. In 1926, at the time it is claimed the appellant should have instituted the action of foreclosure, the land was constantly depreciating in value. The makers of the note were insolvent and the note was long past due. Assuming that the appellant should have instituted an action for foreclosure of said mortgage on or before said date, and have prosecuted the same diligently, what, under the record, would the appellant have realized on said collateral?

No witness qualified to express an opinion as to such value, and no direct evidence was given on the question, by opinion or otherwise. The evidence was directed to the value of the land covered by the mortgage. This took a wide range and was by no means confined to the time when it is claimed the negligence of appellant occurred. The estimates of value vary all the way from $20 or $25 per acre to $155 per acre, depending largely upon the specific time fixed by the witness, there being unanimity of agreement among the witnesses that land values have greatly depreciated since about 1920. Of course, the evidence of the value of the land was proper to be considered in determining the value of the note and mortgage. Also it was proper to consider that the makers were

insolvent, that there was a prior mortgage of $52,000 on the premises; also the probability that the then holder of the fee title might or might not redeem the premises, and all other facts and circumstances that would properly aid in the solution of the question as to the value of the note and mortgage at said time.

When all such matters are taken into consideration as shown by the record, we are constrained to differ from the district court in the conclusion that appellee has shown that he has been damaged in the amount of the face of said note and interest thereon from September 1, 1926. We are of the opinion that the appellee failed to establish by proper and competent evidence the amount of damages he suffered by reason of the failure of appellant to sooner foreclose the pledged collateral. Of course, the appellee is entitled to credit on the judgment held by appellant for the net amount received by appellant by foreclosure of said mortgage. The proper computation can best be made in the trial court, and the cause will be remanded for a decree consistent with this opinion.—Reversed and remanded.

STEVENS, C. J., and DE GRAFF, ALBERT and WAGNER, JJ., concur.